```
UNITED STATES DISTRICT COURT                FOR ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA
                                                          MEMORANDUM
                                                          AND ORDER
                                                          07-CR-792 (JG)
        - against -

MANUEL CARRASCO-ABREU, also
known as "Juan O. Perez,"

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
```

A P P E A R A N C E S :

    BENTON J. CAMPBELL
        United States Attorney
        Eastern District of New York
        271 Cadman Plaza East
        Brooklyn, New York 11201
    By:   Richard T. Lunger
        Attorney for Government

    FEDERAL DEFENDERS OF NEW YORK, INC.
        16 Court Street, 3rd Floor
        Brooklyn, NY 11201
    By:   Len Hong Kamdang
        Attorneys for Petitioner

JOHN GLEESON, United States District Judge:

        Defendant Manuel Carrasco-Abreu, a citizen of the Dominican Republic, moves to dismiss a one-count indictment charging him with illegally reentering the United States after having been removed. He claims that he was never "removed" within the meaning of the illegal reentry statute, 8 U.S.C. § 1326, because he initially left the United States pursuant to an order of voluntary departure, not an order of removal. For the reasons stated below, the motion is denied.

BACKGROUND

Carrasco-Abreu entered the United States from the Dominican Republic prior to September 1991. On September 17, 1991, the Immigration and Naturalization Service ("INS")[1] served an order to show cause charging Carrasco-Abreu with entering the United States without inspection. On December 20, 1991, he appeared for a hearing at the Buffalo Immigration Court and stipulated with the government to an order resolving the proceedings. The terms of this stipulated order are disputed.

The transcript of the hearing shows the immigration judge opening the proceedings by asking Carrasco-Abreu, through his counsel, to acknowledge service of the order to show cause, admit to its allegations, and concede his deportability.[2] Carrasco-Abreu's counsel did this, and designated the Dominican Republic as his country of deportation. The immigration judge then stated:

> Thank you. This been [sic] an off the record discussion the sum and substance of which is that the government of the United States has no objection to the court entering an order granting voluntary departure provided that he leave no later than April 20, 1992 or any extension granted by the district director. Should the respondent fail to report by that time, he shall be deported from the United States to the Dominican Republic.

Hr'g Tr. 1. The immigration judge then placed Carrasco-Abreu under oath and stated:

---

[1] The Homeland Security Act of 2002 abolished the INS and transferred its functions to several bureaus in the Department of Homeland Security ("DHS"). Pub. L. No. 107-296, §§ 402, 471, 116 Stat. 2135, 2178, 2205 (codified as amended at 6 U.S.C. §§ 202, 291).

[2] Prior to the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009 (codified as amended in scattered sections of 8 and 18 U.S.C.), removal of aliens who had already entered the United States was called "deportation," as distinguished from "exclusion," which referred to removal of aliens seeking entry into the United States. *See* IIRIRA § 304 (amending 8 U.S.C. §§ 1229-1231). The terms "deportation" and "deportable," which survive in some provisions of the United States Code, *see, e.g.*, 8 U.S.C. § 1101(a)(47)(A) (defining "order of deportation"), can be used interchangeably with "removal" and "removable." *Lazo v. Gonzales*, 462 F.3d 53, 54 (2d Cir. 2006).

> Initially the United States Government sought to deport you.
>
> However now the United States Government is or has no objection to allow you to remain in this country and has no objection to giving you trust and allowing you to leave voluntarily allowing the court to place trust in you that you will leave voluntarily no later than April 20, 1992 and that if you don't leave by that time and your attorney does not get an extension beyond that date you will be deported to the Dominican Republic.

Hr'g Tr. 2. Carrasco-Abreu stated that he understood and agreed "to that," *id.*, and the stipulation was converted into an order after Carrasco-Abreu's attorney, at the government's request, stated that Carrasco-Abreu was eligible for voluntary departure and that the order should "be accepted as a final order without appeal," *id.*

Carrasco-Abreu was arrested on New York State drug possession charges prior to his voluntary departure date and did not depart by April 20, 1992. The INS issued a warrant of deportation directing that Carrasco-Abreu be removed. Carrasco-Abreu pled guilty to the drug charges and was sentenced to concurrent terms of four years to life and six years to life. On May 8, 1997, while Carrasco-Abreu was in state custody, the immigration judge who had presided over Carrasco-Abreu's hearing issued an order clarifying the effect of the stipulation entered at the hearing. The May 8, 1997 order states that in order to "clarify the official and final order" stipulated to at the December 20, 1991 hearing, the immigration judge "concludes," *inter alia*:

> The certified recording of the proceeding indicates that the respondent was granted voluntary departure on or before April 20, 1992, and that if the respondent failed to depart when and as required, the privilege of voluntary departure would be withdrawn without further notice of proceedings, and the respondent would be deported from the United States to the Dominican Republic on the charge contained in the his [sic] Order to Show Cause, pursuant to

Section 244(e) of the Immigration and Nationality Act. Def.'s Mem. Supp. Mot. Dismiss Ex. D. The order ends: "Therefore, it is hereby ordered that the official and final decision of the immigration judge is that the respondent was granted voluntary departure on or before April 20, 1992." *Id.*

On June 4, 1997, Carrasco-Abreu was released on parole and transferred to INS custody. On June 14, 1997, he was removed pursuant to the May 8, 1997 order. He subsequently reentered the United States, was indicted for illegal reentry on July 28, 2003 in the Southern District of New York, and was convicted at a bench trial and sentenced principally to imprisonment for one year and one day. *United States v. Carrasco-Abreu*, No. 03-CR-912 (SHS) (S.D.N.Y. June 2, 2004). He was removed on August 2, 2004 pursuant to a warrant of removal which indicated that it was based upon a final order by "a district director or a district director's designated official." Gov.'s Mem. Opp. Mot. Dismiss Ex. 2. Neither Carrasco-Abreu or the government are certain, but they both believe that this removal was based on the original removal order.

Carrasco-Abreu again reentered the United States, and was discovered in the United States after his January 17, 2007 arrest for unauthorized use of a motor vehicle in Queens, New York. He was indicted for illegal reentry on October 26, 2007, leading to this motion.

DISCUSSION

The illegal reentry statute provides in relevant part that "any alien who (1) has been . . . deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter (2) enters, attempts to enter, or is at any

4

time found in, the United States" is guilty of a crime unless the Attorney General first consents to the alien's reapplying for admission to the United States. 8 U.S.C. § 1326(a).[3] Illegal reentry is punishable by up to 20 years imprisonment if the removal "was subsequent to a conviction for commission of an aggravated felony." § 1326(b)(2). Carrasco-Abreu claims that no removal order or order of deportation was ever issued, and that he was thus not "deported" or "removed" within the meaning of 8 U.S.C. § 1326.[4]

Any departure from the United States after the issuance of an order of deportation constitutes actual deportation for the purposes of the illegal reentry statute. *See* 8 U.S.C. § 1101(g) ("For the purposes of this chapter [including 8 U.S.C. § 1326] any alien ordered deported or removed . . . who has left the United States, shall be considered to have been deported or removed in pursuance of law, irrespective of the source from which the expenses of his transportation were defrayed or of the place to which he departed."); *see also Mrvica v. Esperdy*, 376 U.S. 560, 563 n.4 (1964) (noting that the provision was intended to apply to the illegal reentry statute). Therefore, the decisive question is whether an order of deportation was ever issued as to Carrasco-Abreu.

The government claims that the December 20, 1991 oral order was a valid order

---

[3] The indictment does not specify that Carrasco-Abreu did not receive consent from the Attorney General, but instead that he did not receive consent from the Secretary of the United States Department of Homeland Security. Indictment 1. Carrasco-Abreu does not challenge the indictment on this ground.

[4] Carrasco-Abreu's objection is not to the facial sufficiency of the indictment, which alleges that he had previously been deported. Indictment 1. His objection is instead a claim that the government's theory of how he violated 8 U.S.C. § 1326 relies on an erroneous interpretation of the legal significance of the immigration judge's order. Although this is in a sense a challenge to the sufficiency of the government's evidence, *cf. Costello v. United States*, 350 U.S. 359, 363-64 (1956) (declining to allow challenges to indictments based on adequacy of evidence presented to grand jury), it is fit for resolution through this motion since it turns on an interpretation of the legal effect of an agreement. *See* Fed. R. Crim. P. 12(b)(2) ("A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the issue."); *see also United States v. Fermin-Rodriguez*, 5 F. Supp. 2d 157, 164 (S.D.N.Y. 1998) (granting motion to dismiss indictment based on finding that the manner of the defendant's departure from the country did not as a matter of law constitute deportation under 8 U.S.C. § 1326).

of deportation, and thus that Carrasco-Abreu's 1997 departure from the United States constituted removal subsequent to the commission of an aggravated felony. Carrasco-Abreu argues that it was an order granting voluntary departure only, and not an order of deportation at all.[5]

The government puts forth two arguments in support of its position that the oral order was not only a grant of voluntary departure but also an order of deportation. One is that Carrasco-Abreu's mere concession of deportability itself gave the stipulated order the effect of an order of deportation within the meaning of 8 U.S.C. § 1326. The second is that the immigration judge's statements that Carrasco-Abreu would be deported if he did not voluntarily depart were actual terms of the order to which Carrasco-Abreu consented, not mere predictions of what would result if he did not voluntarily depart.

The first argument was accepted by Judge Stein in denying Carrasco-Abreu's motion to dismiss his July 28, 2003 indictment in the Southern District of New York. *United States v. Carrasco-Abreu*, No. 03-CR-912 (SHS), 2003 WL 22595772, *2 (S.D.N.Y. Nov. 10, 2003). 8 U.S.C. § 1101(a)(47)(A) defines an "order of deportation" as "the order of the special inquiry officer . . . concluding that the alien is deportable *or* ordering deportation" (emphasis added). The Second Circuit has held that due to this provision, an order merely concluding that an alien is deportable but not ordering deportation constitutes an "order of deportation." *See Lazo v. Gonzales*, 462 F.3d 53, 54-55 (2d Cir. 2006) (noting that "removal" can be used interchangeably with "deportation" and construing 8 U.S.C. § 1101(a)(47)(A) to mean that "the

---

[5] Neither party has addressed whether Carrasco-Abreu's 2004 departure from the United States would constitute removal within the meaning of 8 U.S.C. § 1326 even if the 1997 departure did not. As discussed *supra*, although Carrasco-Abreu believes that his 2004 departure was pursuant to the 1991 order, the record before me does not make that clear.

need for an 'order of removal' is satisfied by an [immigration judge]'s finding of removability").

Carrasco-Abreu, through counsel, conceded that he was deportable, but the immigration judge did not issue an order expressly adopting this concession. The order entered at the proceeding was a conversion of the stipulation into an order. Thus, the concession is not itself an order of deportation. However, the fact that the immigration judge obtained Carrasco-Abreu's concession of deportability prior to outlining the terms of the stipulation, with the knowledge that an order finding deportability had the effect of an order of deportation, counsels strongly in favor of accepting the government's second argument and reading the immigration judge's remarks about what would happen to Carrasco-Abreu as part of the stipulation, not simply a prediction.

The government's second argument, that an order of deportation was part of the December 20, 1991 stipulation, is more persuasive than Carrasco-Abreu's strained contrary reading. It is quite implausible to suggest that the immigration judge elicited from Carrasco-Abreu a concession that if converted into an order would justify his summary deportation with no further proceedings, then informed Carrasco-Abreu that the government wished to allow him to voluntarily depart and that if he failed to voluntarily depart he would be deported, then asked Carrasco-Abreu to "stipulate" only to the government's offer to allow him to voluntarily depart and not to the deportation (that is, to stipulate to nothing in exchange for the government's unilateral offer),[6] and finally converted only this one-sided "stipulation" by the government into

---

[6] Indeed, it is hard to fathom why Carrasco-Abreu was placed under oath at all, if he was not being asked to enter into any obligations. *See, e.g.*, *Greater Buffalo Press, Inc. v. Harris, Corp.*, No. 85-CV-1404E, 1988 WL 85943, *2 (W.D.N.Y. Aug. 15, 1988) (noting that offers to form unilateral contracts are accepted by performance and not return promise). I do not credit Carrasco-Abreu's contention, advanced at oral argument, that

7

an order. It is far more natural to understand the stipulated order as including a grant of voluntary departure until April 20, 1992 and an alternative order of deportation, justified by Carrasco-Abreu's on-the-record concession of deportability, in the event of Carrasco-Abreu's failure to depart by the deadline.

The immigration judge's May 8, 1997 order was not what the parties stipulated to and thus has no independent legal effect. Given the ambiguities within the document itself, it is not a helpful aid to construction of the December 20, 1991 oral order. Accordingly, I do not give it weight in interpreting the stipulated order. However, even were I to consider it, I would find it unhelpful to Carrasco-Abreu. The immigration judge's assertion that the tape indicated that the privilege of voluntary departure would be withdrawn "without further notice of proceedings," Def.'s Mem. Ex. D, when such a phrase is not found in the transcript, suggests that the immigration judge understood the agreement to include a condition that Carrasco-Abreu would be deported if he did not voluntarily depart. Carrasco-Abreu emphasizes that the concluding sentence of the order mentions only that Carrasco-Abreu was granted voluntary departure before April 20, 1992, but this fact is not as probative as he claims. While the record is devoid of evidence regarding the circumstances leading up to and following the issuance of the May 8, 1997 order -- another reason I do not rely on it -- the most natural inference to draw is that the immigration judge wrote the order in contemplation of Carrasco-Abreu's upcoming release into INS custody, and intended the INS to use that order alone to deport Carrasco-Abreu (which appears to be what took place). Therefore, to the extent that the May 8, 1997 order suggests anything, it suggests that the immigration judge believed that the December 20, 1991 stipulated

---

the immigration judge merely placed Carrasco-Abreu under oath in order to admonish him.

order contained an alternative order of deportation.

    I find that the December 20, 1991 stipulated order contained an order of deportation which would take effect if Carrasco-Abreu failed to voluntarily depart by April 20, 1992. As Carrasco-Abreu did fail to voluntarily depart by that date, he became subject to a final order of deportation, *see* 8 C.F.R. § 1241.31 ("[A]n order of deportation, including an alternate order of deportation coupled with an order of voluntary departure . . . shall become final . . . upon waiver of appeal . . . ."), and his subsequent departure from the United States constituted removal within the meaning of 8 U.S.C. § 1326.

## CONCLUSION

    For the reasons stated above, the motion to dismiss the indictment is denied. Jury selection and trial shall be held on February 11, 2008 at 9:30 AM.

                    So ordered.


                     JOHN GLEESON, U.S.D.J.


Dated: January 25, 2008
    Brooklyn, New York